Good morning and may it please the court. My name is Raymond Deary and I represent Ron Adams in this appeal. I would like to reserve two minutes of my time for rebuttal if I may. You have a clock in front of you and you have whatever time is left for you. Thank you, Your Honor. Stop talking and sit down. Thank you, Your Honor. This case is essentially a contract case. At its core, we had a plea bargain or a plea agreement agreed to by both parties. The central foundation of that plea agreement was a promise by the United States government to recommend that no fine be imposed. Counsel, I'm missing a couple of things about your argument, missing in the sense I don't understand. I thought what you had was a recommend deal, an 11A1B, but you're arguing it like you have an 11A1C deal, a deal where this is going to be the sentence. What am I missing there? Well, the basic premise of the contract is that it was illusory. It couldn't be performed. The judge, as the district court said in its decision, I don't have any discretion. It's mandatory. So it was impossible to mean anything. I promise and I recommend to do something, and there's just no way that that promise means anything. Did the government do what it promised? Did it recommend no fine? Absolutely not. It did not make a recommendation. Is it true that there can be no fine if the person – well, let me back up a step. As I understand it, there's not a statutory mandatory minimum fine you're concerned about. Your concern is that the guidelines say that the defendant has to be fined unless he can't pay a fine. The court said yes. The court said it's mandatory under the guidelines. I have no discretion. It's blocking guidelines, not statutes. That's correct. It's up to – And under the guidelines, there's an unless if the defendant can't pay the fine. That's correct, Your Honor. And the government and the court was aware, or should have been aware, that Mr. Adams was able to pay the fine. Now, if the problem is – if the problem is that the government promised to recommend no fine and the judge said, gee, sorry, I can't do it, that would all be cured by an amyline remand, right? Well, amyline remand is definitely the secondary relief that we're seeking. We're seeking rescission of the plea agreement. And if I may just quote – this is why I think it's a contract case. Aren't you actually seeking to set aside the judgment based on the plea? That's correct. That's correct. We are seeking that – we're stating under the law, you have to hold the government to the literal terms of the contract. But even more than that, the promise, the sole inducement that Mr. Adams received to plead guilty, he gave up all of his constitutional rights, his property, his money, in return for one thing, a promise. And I'll quote – Incidentally, was there an objection to the fine at the time of sentencing? The objection – this goes to a case that you wrote about in the Wise decision, where there was no warning that it was a mandatory sentence. The district court even stated in its own decision, I've been thinking about this very carefully, but not until the sentence is imposed does anyone find out, I submit, that there's a mandatory fine. You must have missed my question. I'm sorry, I did. What I wanted to know was, did the defense object either to the government's failure with respect to a recommendation or with respect to the judge's determination that a fine should be imposed? Yes, they did, but it was not particularized. It was not a sophisticated objection. Show me where to read it. Sure. At excerpts of record 52 – That's where I am. Objections to the fine, and I will pull it out because, well, I had a cheat sheet to get there. The excerpts of record at 52 – I see right after he imposes that fine, Mr. Adams, do you have any questions? No. That's why I say it's unparticularized. Well, I'm missing where there's an objection, where there's, judge, we had a deal, recommendation of no fine. The government should recommend it, and you should not impose a fine. And you're right. There wasn't anything like that. But I think you have to look at your decision and why in both the Burns – sorry. Where is the closest there is? That is the closest, Your Honor. It's on the mini script on page 63. It says, in fact, he has unsecured debts that he has not used his assets to pay off. These are not things that he can liquidate quickly. But my point is – Well, wait. I'm looking for the objection where the defense says we're not getting our deal. There is none, as I told you, Your Honor. Okay. So it's got to be plain error. I disagree with that. I think you look to the Myers decision. The Myers decision says harmless error doesn't apply in this context because when you have a government breaching a plea agreement, there's a higher standard there. And other circuits have decided the same thing. Even, however, if it's under plain error, you still meet plain error. Because you – sorry. I mean, let's say that you had raised an objection at that point and said, look, Your Honor, the government didn't make its recommendation. We object. And AUSA had gotten up and said, you know, Your Honor, the defendant is right. We're required to make a recommendation. And, yes, we recommend that the court have imposed no fine at all. What difference would that have made? Well, practically speaking, I'm not sure it would have made anything. But under the – It makes no practical difference. I mean, let's say not practically speaking. Let's say non-practically speaking. Okay. What difference in the world would it have made if the government had, in fact, made a recommendation, said, yes, you know, we are honor bound, we're men of honor, men and women of honor here in the U.S. Attorney's Office, and by God, if we said we're going to recommend something, that's what we recommend the court do. And the court says, well, thank you for the recommendation, but I am by law not allowed to do that. So I'm very glad to hear a recommendation, but obviously I'm not going to do something unlawful because you recommend it. What would be the point of that exchange? Well, that issue was raised precisely in Myers, Your Honor. That same issue was raised in which the government failed to make the recommendation. And then after the judgment was entered, there was a colloquy or there was a conversation between the court and the prosecutor's office saying, wait a minute, yeah, we're making a recommendation. But as the court said in that case in Myers, the cat's out of the bag. And that court has been, it's too late. It's how can you argue against the judge that's already made up its mind. And the literal terms of the plea agreement, the contract has to be made up. Well, that sounds like it was a timing case. Here it's still in time. This is before the judge actually pronounces the sentence. You know, you object. You say, hey, the government said it's going to recommend. And the judge says, look, I notice I don't have any authority to do it. And the government says, okay, we recommend. We recommend. Or let's say we even go back beyond that. Let's say before the judge opens his mouth to say anything, the U.S. attorney says, you know, we have a deal here. And I recommend that the court impose a sentence of no fine. And the judge says, well, thank you for the recommendation. But I've read the statute and it turns out I don't have any discretion. What difference would that recommendation have made? Again, the point is that same exact argument was made in Myers. The same, it doesn't matter. You have to enforce the literal terms. Do you have another answer? What difference would it make? The second answer would be, first of all, that goes to my main issue. If it's impossible to perform the recommendation, then it was an unintelligent waiver of his constitutional rights. It's an illusory contract. I must say for a guy who paid for his own lawyer, he didn't get very good legal advice in this case, Mr. Adams. At the district court level? Yes. I hope. I don't know who represented him there. I assume it wasn't you. It was not. I can't speak. I was not trying to say anything about you personally. I'm just saying there are any number of places where he probably should have paid good money for what he thought was a competent lawyer. He retained counsel. I just want to reserve a little bit of my time, if I may. Just tell me where to look in the plea agreement for what you say was violated. Sure. I say you look right away to the essence of the plea agreement, which is at paragraph 5, the defendant acknowledges that the agreement will be fulfilled provided the government makes the recommendations contained in paragraph 11 of this pleading. Okay. Then I look at paragraph 11. Paragraph 11. Based on the forfeiture settlement agreed to herein, the United States agrees to make a recommendation that no fine be input. That's the only bargain he got in this case. It wasn't fulfilled and it was impossible to fulfill. I think I have whatever time I have remaining, I'd like to reserve the balance. It's negative nine seconds, but you've got it all. Thank you. We'll hear from the government. Thank you and good morning. My name is Bernie Hughley. I was the prosecutor in this case. I think the point that I want to start from here is you will see no articulation from me that you're talking about, Judge. Judge, we have a deal here. I recommend no fine. And the reason is simply this. The court came out and said, I see, I understand what the government's argument is. What on earth are you doing answering the plea bargains that are illegal? Your Honor, I don't think it was illegal. I do think that the judge had discretion. I think that that one statement that is being made that Judge Lovell said, I think it's mandatory. If you look beyond that, at the excerpt of record at page 50, and in particular 56, the judge says, Now the court in determining the amount of fine or whether to impose a fine must consider the ability of the defendant to pay a fine and the circumstances surrounding the situation. Then the judge went right through his discretionary requirements under the guidelines. He looked at the whether he should impose a fine, the impact on the family, the cost of incarceration. He went right down the guidelines. He made that one misstatement about, I think it's mandatory. It's mandatory that he make the considerations. But consider what happened here, Judge, long before the pre-sentence report came out, long before anybody, and I suspect defense counsel included at the trial level, long before anyone knew that this man was worth $7 million, there was a plea agreement negotiated wherein the government said, I'll make a recommendation of no fine based on the fact that there had been forfeiture here. That's not illegal. If he had no ability to pay ---- Counsel, how much did he forfeit? He forfeited three parcels of land. If you look at the entire record, you'll see appraisals of about $44,000. I believe that the forfeiture amount of the sale was roughly 110. I don't have the precise figure, but he forfeited the three parcels of land. So he forfeited land worth somewhere between 44 and 110,000. Yes. And I think closer to 110 is what we actually got, Your Honor. Okay. Now let me ask you this. Paragraph 11 of the plea agreement says, based on the forfeiture settlement agreed to herein, the United States agrees to make a recommendation that no fine be imposed. Correct. My thinking on that is you both made a deal, and the United States made it in ignorance of just how rich the defendant was. No question. If you bought life insurance and the insurance company didn't know you had an aneurysm about to burst and you died a week later, tough for them. Right. They pay. That's right. Your ignorance doesn't entitle you to breach your contract. That's correct. Now I look at the sentencing transcript, and I don't see where the government attorney stood up and said, Your Honor, it is my duty to advise you, pursuant to paragraph 11 of the plea agreement, that the United States agrees as agreed in that agreement and to make a recommendation that no fine be imposed, and we now do make that recommendation to you. And you won't find it there, Your Honor. You didn't do it. No. Now I also don't find that the defendant ever told the judge, Judge, we had a deal that they'd make a recommendation, and they didn't make it. And I don't think it would have made any difference because the judge isn't talking about $4,000, the guideline minimum. He's talking $400,000. Correct. Two things, Your Honor. I want to clearly understand. But I don't understand why you didn't make the recommendation. Let me explain. I didn't make the recommendation because the court, in my view, clearly said, I understand the government's recommendation here. Where? I reject it. Where? Tell me the line to read. I'm sorry, I don't have the line. It's at that point. You must have the excerpts right in front of you. I'll find it, Your Honor. I mean, I'm sure you have them right there. The point in the record, the judge said. Yeah, I don't want to do your research for you. Just show me the page in line where the judge says, I know the government is recommending that in substance. He never said that. He said that I see that the government's agreed to recommend. I'm going to find it. Show me the words. I apologize, Your Honor. I didn't have the page marked here. I'm struggling. What did you do in preparing for oral argument here? I'm sorry? What did you do in preparing for oral argument here? What do you think we're going to do, sit here and talk about the weather? Oh, Your Honor, I'm sorry. I don't have the page. Did you read this last night on your? I did. I'm sorry. Did you mark the pages that might be relevant? I didn't. Well, it's not serving your client well. Why don't you send us a note about this, something later, because you're running out of time. I have a different problem that's as serious. At the time of the plea colloquy, the judge did not advise the defendant that there was a mandatory minimum fine. That's correct. There is no minimum. Why isn't that the end of the case? Why doesn't that initiate the plea? And you, regardless of what the plea bargain is like, this is a material fact omitted from the advice that the judge has to give the defendant. And he didn't give it to him. And why is that the end of the case? Well, we turn it back and give him a chance to withdraw his guilty plea. Your Honor, there is no mandatory fine by statute. And I think that's what a Rule 11 speaks to. What difference does it make whether it's by statute or by sentencing guidelines? At that time, the sentencing guidelines were deemed to be mandatory. And mandatory means you get reversed if you're a district judge and do something that is that you may not. That's what makes it mandatory, whether it's by statute, whether it's by constitution, whether it's by regulation, whether it's by sentencing guideline. It doesn't matter. The point of the matter is that this man is entering a plea, and he is not told of the consequences of what he does. He is not told that among the punishments that he must suffer is a fine of at least $4,000. He was not told, right? He was not. And you stood by, and you let it not be told. But I didn't know that there was a minimum mandatory fine by guidelines. You knew that it was a possibility, that somebody does not qualify financially, and you should have known if you'd done your homework. What was he told about the guidelines? When I was a district judge, our script was that the guidelines are so complicated and depend so much on facts that you won't know until the pre-sentence report that no one could be told what the guidelines would say about a sentence. But the defendant was always advised in the script that his sentence would be constrained by the guidelines and a calculation would be made pursuant to the pre-sentence report and any other submissions and determinations by the court. Was he told something like that? And if so, point me to the page in line. Okay. Again, I can't point to the page. It's the standard procedure of the district courts in Montana to say the sentence will be by the guidelines. And typically, Judge Lovell says, and I don't know what the guidelines will be, and that goes back to your question. We had no idea what the fine range would be, period. So consequently, there is an advice. I have to search through all this stuff myself and find out just what the judge said. Right. And I'll give you the exact page of that, too, on my note. But the bottom line here is we didn't know, and implicit in the plea agreement, we reserved the right to talk about the guidelines and object to any provision whatsoever. So there's no question that this defendant knew he was being sentenced pursuant to the guidelines. Counsel, your time is running out, and I do have a couple of questions. First of all, wasn't the judge required by Rule 11? In mandatory language to advise the defendant before he took his plea that there was a mandatory minimum fine? Yes. Minimum mandatory sentence, yes. It says penalty. Penalty, yes. It doesn't say sentence. It says penalty. Penalty. Penalty, yes. It was. Then do you agree that the judge was required in mandatory language to tell the defendant that there was a mandatory minimum penalty, including a fine? Yes. Now, you said that the guidelines were not mandatory. As I read the guidelines, it says the court will impose a fine in all cases. Sounds like mandatory language. It's then followed by exceptions that are not applicable here. Correct. So, therefore, the judge had a duty under the guidelines, since the exceptions were not applicable, to impose a fine. Isn't that true? This is true. And what the judge advised him was was the outside range of the fine, the minimum mandatory sentence of five years and a potential fine of up to $2 million. But he didn't advise him of the man that he had a duty to impose a mandatory minimum fine. That's correct. And I think in his defense, the reason why was he had no idea what the guideline was. And that's why we don't have a fine in the range of the minimum. Well, we're not defending judges here. You know, the question – what we are concerned here with is the rights of the parties, the rights of the defendant. You don't have to justify the judge's actions. Unless if the judge, which judges occasionally are, are reversed, and that's it. You don't think he's a bad guy for doing that or anything of that sort. We do, however, expect counsel, particularly counsel of the government, to be more aware of their record. And we do expect that when they enter the plea bargain and they go to court, that they familiarize themselves with the applicable sentencing scheme and make sure that the court overlooks something like that that brought their attention. That is part of the government's responsibility. There's another exception here besides poverty. The guideline at 5E1.2e says the judge can waive the fine if the defendant's not able to pay it and isn't likely to become able to pay it, even with a reasonable installment schedule. Then there's another exception. Imposition of fine would unduly burden the defendant's dependence. Was the dependence an issue here? Did the guy have dependence? I don't remember. He had dependence, yes. And was there any issue of undue burden on him? The judge didn't think so. He said he considered that specifically. I think what the judge said is the defendant stood mute at sentencing, made no allocution, and has never volunteered anything about his assets or his affairs, so I have no idea what his financial circumstances are, except that he looks like he has an expensive house, if I recall right, which I'm not. I think what he was talking about there is I have no idea how much you've made selling drugs, so therefore I can't use that guideline provision. But he did. He went right down through three provisions, the impact on the family, the cost of incarceration, and the ability to pay. And in our view, that, and quite frankly, going back to the first, I think he had discretion. I don't think that there was a minimum mandatory fine required here. If he could have made the finding that there was too much of an impact on the family or looking at those other considerations, he could have waived the fine. If he could have. If he could have. If he could have. But, you know, I don't know if this man had been poor or, you know, if the sentence had been different, but the fact of the matter is the fine is mandatory unless certain requirements are met. Unless you know that those requirements are met at the time of the plea bargain, at the time of the plea colloquy, you have to tell the defendant about it. You have to tell him, look, there is a provision that says you're going to have a mandatory fine. And there are exceptions. You qualify for those, maybe. And that's why I don't think. That is advising the defendant of his rights, which was what the Rule 11 colloquy is supposed to do. It's supposed to put as much before the defendant as is attainable at the time about his situation. And the mandatory nature of the fine, subject to certain exceptions that look like are not applicable here, that's just one of those realities that nobody thought about. Not the court. The defense lawyer, to his shame, and not the government, so it's embarrassing. If I may conclude, Judge, you're using the word mandatory with exceptions. I think what that means is that a fine is conditional, not mandatory. It's conditional upon certain conditions being met. And I think speaking of a mandatory fine here is really not correct. There is no mandatory fine. It's a fine that is conditioned on certain. But when the time comes to actually sentence him, the judge says it's mandatory. And the judge miscalls. He enters a plea bargain not knowing, thinking that he's got a deal from the government where the government is going to say no fine, is going to plead for him, is going to make. And the government stands mute, has his deal and stands mute. Why? Because the judge has made a determination that this thing is mandatory. Something of which he was not advised at the time he pled guilty. And something about which might well have made a difference in his decision whether or not to plead guilty. I mean, it's pretty simple. I think it is, Judge. The reason you didn't open your mouth and you didn't live up to your bargain is because something happened that I guess even you didn't anticipate. A judge who would find this is mandatory. But, Judge, if you look at the transcript and you continue it, he continues on. He says it's mandatory. And then he backed right off that and says, in my discretion, here's what I looked at. So why didn't you stand up and say, oh, if it's not mandatory, Your Honor, we have an obligation. We, the government, have an obligation to recommend that you give him no fine. And this is I'm living up to my obligation. And if the court can possibly make these findings in a way as to impose no fine, this is what the government recommends. You didn't say that, did you? No, I didn't. If you had, could the judge have departed downward from the guidelines and said, I depart downward and do not fine the defendant in light of the government's recommendation? The guidelines say the judge shall fine unless the defendant either can't pay it or it would be too much of a burden on his family. But the guidelines also say the judge can depart downward from the guidelines. Now that the guidelines are just guidelines anyway and not mandatory, the whole scheme is different. But even then, the judge could depart downward. Is the departure downward because of a government recommendation of prohibited grounds for departure? Not that I know of. So if you had done what you promised to do and said, Your Honor, we made a deal to recommend no fine, and pursuant to that agreement, we recommend that no fine be imposed, could the judge have departed downward and imposed no fine? No, I don't think so. I don't think that's a valid ground. Just because I recommend or the government recommends. Where should I look at the grounds? I thought under Coons, any ground was okay unless it was permitted or prohibited. Well, I think you have to go to the guidelines. I don't think that just because the government didn't recommend it is a grounds. You have the guidelines right there, I assume. Just tell me the subsection you're talking about. The subsection is you have to go through the discretionary. No, I mean the number. Because the way I remember it is different from you. It's 5-3. And you can correct me by just reading me the language and telling me the subsection. It's the subsection that the judge went through. 5, sorry, 5-3, 5-C-3. It's the same section he applied, and there's nothing about departure there. There's nothing about departure in that section. In Judge Coons, it says you can always depart unless it's prohibited. Remember Coons' Supreme Court case? Yes. Big case. You've read it. Of course. But the point is the judge understood what the government's recommendation was here. The reason I stood mute is he says, I understand what the government's promising. I'm not going to do it. So then I could have stood up and said, wait a minute, Judge. You just acknowledged that you know what the government's recommendation is. I understand that, but I've got to say it anyway. I used to just love it when lawyers said, wait a minute, Judge. You are about to make a mistake. Save me from a lot of mistakes. And see, I didn't see it as a mistake because I took the judge's comments as an understanding of my recommendation and an acknowledgment of it and simply a rejection of it. And quite frankly, I didn't stand up and repeat what he already acknowledged. You didn't make a recommendation. I made it in my view and in the practice we've always gone through there. I put it in the plea agreement. We agree to recommend that. The judge says, I see the government has agreed to recommend. I took that as an acknowledgment that he understood, considered, and rejected our recommendation. There was no intent on my part to violate that plea agreement. I thought it was all on the record based on what his comments were, plain and simple. Okay. Thank you. Thank you.
judges: Alarcon, Kozinski, Kleinfeld